IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Allen M. Flagler, | ) | Case No. 4:23-cv-05227-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Williamsburg County South Carolina | ) | |
| Government, Williamsburg County | ) | |
| Sheriff's Office, Stephen R. Gardner, | ) | |
| Vernie Cumbee, Louie Timmons, | ) | |
| Kendrick Huggins, Kathy Hammond, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants Williamsburg County South Carolina Government (the "County"), Williamsburg County Sheriff's Office (the "Sheriff's Office"), Stephen R. Gardner, Vernie Cumbee, Louie Timmons, Kendrick Huggins, and Kathy Hammond. [Doc. 79.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings.

On December 29, 2025, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that Defendants' motion for summary judgment be granted. [Doc. 97.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [Doc. 97-1.] The Clerk docketed Plaintiff's

objections on January 15, 2026 [Doc. 99], and Defendants filed a reply on January 29, 2026 [Doc. 100].

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## BACKGROUND

Viewed in the light most favorable to Plaintiff, the summary judgment record reveals the following facts.[1] Plaintiff, an African-American male, served as a sheriff's deputy in the Sheriff's Office. [Docs. 79-3 at 3 (15:22–25); 83 at 6.] On July 28, 2019, Plaintiff injured his right knee and left wrist while on duty. [Docs. 79-3 at 4 (16:1–4); 79-4.]

---

[1] Because the Magistrate Judge provided an accurate and thorough recitation of the facts [*see* Doc. 97], the Court includes only the factual information necessary to address Plaintiff's objections.

On August 26, 2019, Dr. Edward Mikol restricted Plaintiff to light-duty work. [Doc. 79-5 at 9; *see also* Docs. 79-5 at 2–8; 83-1 at 24.]  On March 1, 2021, Dr. Mikol indicated that Plaintiff's knee condition was permanent and that he could perform only "seated work with limited walking and carrying [of] no more than 20 [pounds]." [Docs. 79-3 at 9–10 (31:10–32:1); 79-6.]

On November 12, 2019, Dr. Stephan Putnam restricted Plaintiff to no use of his left hand or arm.  [Doc. 79-7.]  On April 7, 2020, Dr. Putnam indicated that Plaintiff could not drive safely or use his left hand.  [Docs. 79-8; 83-1 at 26.]

From the time of his injury until April 2020—approximately eight months—Plaintiff performed light-duty work.  [Doc. 79-3 at 30 (123:1–11).]  On April 7, 2020, Plaintiff sent an email to Chief Deputy Cumbee explaining that his doctor had restricted him from driving prior to receiving surgery.  [Doc. 79-9.]  In response, the Sheriff's Office filed a Routine Separation form with the South Carolina Criminal Justice Academy ("SCCJA") as required by South Carolina Code Regulation 37-022, citing "Medical Leave on job injury" as the reason for the separation.  [Doc. 79-10.]  While Plaintiff was at work on April 8, Cumbee advised Plaintiff that the Sheriff's Office would retrieve his patrol vehicle because another deputy needed it.  [Doc. 79-3 at 8 (24:9–24), 25 (115:22–116:4).]

Plaintiff did not return to work as a sheriff's deputy after April 8, 2020.  [*Id.* at 4 (16:5–7); Doc. 79-13.]  On July 7, 2022, Plaintiff sent an email to Captain Timmons to inquire about why he could not access his recertification account.  [Doc. 79-11.]  In response, Timmons sent Plaintiff the following message:

> Allen, [t]he reason that you [cannot] log in to ACADIS Portal is as follows.  I sent a medical on-the-job injury separation into the SCCJA.  This was done due to the fact that you were out on worker's compensation leave.  That combined with the fact

that I had no driving or firearms training for you, due to the worker's compensation leave. When your certification was coming up I contacted the SCCJA and they advised me that I needed to send this paperwork. This puts your certification in a stay or limbo at this time from what I was informed. If you have any further questions regarding the ACADIS Portal or SCCJA please feel free to call me.

[*Id.*; *see also* Doc. 83-1 at 44.]

On July 22, 2022, Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 79-13.] The EEOC issued Plaintiff a right-to-sue letter on August 11, 2023. [Doc. 79-14.] Further, an EEOC investigator advised Plaintiff that the evidence obtained by the EEOC was insufficient to support a claim. [Doc. 79-15.]

Plaintiff's employment was officially terminated on April 21, 2023, in accordance with a negotiated workers' compensation settlement. [*See* Doc. 79-12 at 4 ("The [Plaintiff's] employment . . . was formally ended, effective April 21, 2023, due to [Plaintiff's] permanent medical limitations rendering [Plaintiff] unable to return to work at full duty, and the . . . Employer has also heretofore notified the [SCCJA] that [Plaintiff] was medically separated from his position as a [s]heriff's [d]eputy for the . . . Employer effective April 7, 2020.").] Plaintiff settled his workers' compensation claim on the basis of his inability to perform the duties of a law enforcement officer on April 24, 2023. [Doc. 79-12.] The Release Plaintiff executed was in exchange for payment of $150,000.00, in addition to medical bills and temporary total disability payments made to that date. [*Id.*]

Plaintiff filed the instant action on October 19, 2023. [Doc. 1.] In his supplemented Complaint, Plaintiff checked boxes indicating he was discriminated against based on race, color, and gender/sex in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e to 2000e-17 ("Title VII") and based on disability or perceived disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–17 ("ADA").[2]  [Doc. 1-1 at 4–6.]  In particular, Plaintiff alleges that his employer refused to accommodate him with permanent light-duty work as of April 2020 and that his separation amounted to wrongful termination.  [*Id.* at 6; *see also* Doc. 79-13.]  Plaintiff remains unable to perform the full-duty responsibilities of a sheriff's deputy.  [Doc. 79-3 at 23 (113:19–114:18).]

## DISCUSSION

The Magistrate Judge recommends granting Defendants' motion for summary judgment.  [Doc. 97.]  First, the Report concludes that Plaintiff failed to exhaust his administrative remedies for any race discrimination claim under Title VII because Plaintiff's EEOC charge referenced only disability discrimination.   [*Id.* at 10–11.]  Alternatively, Plaintiff failed to "set out any record evidence or legal argument" to make out a race discrimination claim under 42 U.S.C. § 1981.  [*Id.* at 11–12.]  Nor did he mention § 1981 in his Complaint.  [*Id.*]

Next, the Report recommends dismissing Plaintiff's ADA claims against individual Defendants Gardner, Cumbee, Timmons, Huggins, and Hammond because Plaintiff offered no substantive response to Defendants' argument that the ADA's definition of "employer" excludes individuals, and, thus, Plaintiff abandoned his ADA claims against these Defendants.  [*Id.* at 12.]  Further, the Report recommends dismissing the County because it did not employ Plaintiff.  [*Id.* at 12–13.]  Finally, the Report recommends

---

[2] Plaintiff wishes to move forward with race- and disability-based claims only.  [*See* Doc. 79-3 at 28–29 (118:22–119:8).]

dismissing the Sheriff's Office because arms of the state are entitled to sovereign immunity concerning ADA claims. [*Id.* at 13–16.]

To the extent the Complaint seeks injunctive relief, the Report concludes that Plaintiff's ADA claims fail because Plaintiff cannot demonstrate he is a qualified individual with a disability capable of performing the essential functions of a sheriff's deputy with or without accommodations. [*Id.* at 16–18.] To this end, the Report clarifies that permanent light duty is not a reasonable accommodation required by the ADA. [*Id.* at 17.]

Plaintiff raises several objections to the Report. [Doc. 99.] Specifically, Plaintiff argues that (1) he submitted "specific comparator evidence" of Caucasian employees placed in light-duty jobs; (2) the Report "improperly weighs the Defendants' evidence regarding the 'essential functions' of a deputy over the Plaintiff's actual history of performance"; (3) two of Defendants' pending criminal indictments, an allegedly forged "First Report of Injury" document, discrepancies as to Plaintiff's last day worked, Plaintiff's retention of his departmental weapon after his medical separation, and Defendants' overall bad faith create credibility issues to be resolved at trial; (4) Plaintiff's deposition was conducted while he was under the influence of medication; and (5) permanent disability does not negate ADA protections. [*Id.*] The Court overrules Plaintiff's objections and accepts the Report of the Magistrate Judge as modified herein.

Regarding his race discrimination claim under Title VII, Plaintiff seems to argue that he exhausted his administrative remedies because "[a] plaintiff may raise a claim in a Title VII suit that was not presented to the EEOC if the claim is 'reasonably related to' and can be expected to 'grow out of' the investigation of the EEOC charge." [Doc. 99 at 9.] However, the Magistrate Judge correctly observed that entirely different forms of

discrimination are not reasonably related. [Doc. 97 at 11.] That is, Plaintiff's EEOC charge "did not touch on any matters other than disability discrimination," and "an investigation into race discrimination could not reasonably be expected to occur in light of Plaintiff's sole charge of disability discrimination." [Doc. 97 at 11 (cleaned up).] Further, Plaintiff does not object to the Magistrate Judge's finding that the Complaint contains no reference to 42 U.S.C. § 1981. [*See generally* Doc. 99; *see also* Doc. 97 at 11.] As such, the Court grants Defendants' motion for summary judgment as to Plaintiff's race discrimination claim.[3]

Plaintiff does not appear to contest the Magistrate Judge's conclusions regarding dismissal of all claims against the County. [*See generally* Doc. 99; *see also* Doc. 97 at 12–13.] Nor does he address the Magistrate Judge's conclusions regarding the sovereign immunity of the Sheriff's Office concerning ADA claims. [*See generally* Doc. 99; *see also* Doc. 97 at 13–16.] Finding no clear error, the Court accepts these conclusions and incorporates them by reference to the extent consistent with this Order. Defendants'

---

[3] Even if this Court went on to analyze the merits of Plaintiff's race discrimination claim, Plaintiff fails to reference any record evidence to support his assertion that two Caucasian employees received light-duty assignments. In particular, he fails to describe the extent of the Caucasian employees' injuries or the duration of their light-duty assignments, *i.e.*, temporary or permanent. Without such additional details corroborated by record evidence, the Court cannot determine whether the alleged comparator employees were indeed similarly situated. Further, Plaintiff appears to misconstrue the standards for motions to dismiss and motions for summary judgment. [*See* Doc. 99 at 2 (reciting the motion-to-dismiss standard)]. At the motion-to-dismiss stage, Plaintiff need only *allege* sufficient factual matter to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, at the summary-judgment stage, Plaintiff must cite to *record evidence* to support his assertions. *See* Fed. R. Civ. P. 56(c)(1). As the Magistrate Judge correctly observed, "Plaintiff's . . . mention of two Caucasian deputies fall[s] far short of satisfying Rule 56's requirements." [Doc. 97 at 11.]

motion for summary judgment is therefore granted as to all remaining claims against the County and the Sheriff's Office.[4]

Plaintiff does not specifically object to the Magistrate Judge's conclusion that he abandoned his ADA claims against the individual Defendants. [*See generally* Doc. 99; *see also* Doc. 97 at 12.] However, given that Plaintiff attempted to address Defendants' argument that the individual Defendants were not Plaintiff's "employer" under the ADA [Doc. 83 at 6] and has repeatedly asserted that individuals may sue state officials in their official capacities when seeking injunctive relief [Docs. 83 at 7; 99 at 9–10], the Court declines to deem Plaintiff as having abandoned his ADA claims against the individual Defendants.

That said, Plaintiff may only proceed against the individual Defendants in their official capacities for prospective injunctive relief.[5] The individual Defendants may not be sued in their personal capacities. *See Adams v. Montgomery Coll.,* 834 F. Supp. 2d 386, 396 (D. Md. 2011) (finding that the plaintiff could not "bring a claim against [the individual defendants] in their personal capacit[ies]" under the ADA). Nor may the individual Defendants be sued for damages. *See Lee-Thomas*, 666 F.3d at 249 ("Congress did not abrogate the States' immunity from money damage claims under Title I of the ADA").

---

[4] To be clear, the Court dismisses *all* claims against the Sheriff's Office, including those for prospective injunctive relief. Although "the Eleventh Amendment permits suits for prospective injunctive relief against *state officials* acting in violation of federal law," the Sheriff's Office is a state agency, not a state official. *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (internal quotation marks omitted) (emphasis added); *id.* ("The [prospective injunctive relief] exception is . . . inapplicable here, because the complaint does not name as defendants any officials of the State of Maryland.").

[5] It is unclear whether the Complaint names the individual Defendants in their individual and/or official capacities. [*See generally* Doc. 1-1.] However, the Court construes pro se filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's ADA Claims against the individual Defendants in their personal capacities and for damages.

To the extent any disability discrimination claims for prospective injunctive relief remain against the individual Defendants,[6] *see Bd. of Tr. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 374 n.9 (2001) (holding "Title I of the ADA . . . can be enforced . . . by private individuals in actions for injunctive relief under *Ex Parte Young*"), the Court agrees with the Magistrate Judge that Plaintiff is not a qualified individual with a disability.  In his objections, Plaintiff contends that his "successful[] perform[ance] in a light-duty capacity for nearly a year demonstrat[es] that a reasonable accommodation was not only possible but was already in practice."  [Doc. 99 at 2; *see also id.* at 5 ("The Plaintiff is a 'qualified individual' under the ADA because he could perform essential functions *with* accommodation, as evidenced by his extensive light-duty service.")]  Although temporary light-duty work is a reasonable accommodation, permanent light-duty work is not.  [*See* Doc. 97 at 17]; *Thomas v. City of Annapolis*, 851 F. App'x 341, 349 (4th Cir. 2021) ("A

---

[6] In their motion for summary judgment, Defendants claim that "[n]o action can lie against Sheriff Gardner is his official capacity for injunctive relief because he no longer holds the office and, therefore, has no ability to comply with any injunction."  [Doc. 79-1 at 5 n.3 (citing *Wilson v. United States*, 332 F.R.D. 505, 528 (S.D.W. Va. 2019)).]  However, that rule applies only if the official in question left office *before* the initiation of the case.  *See Wilson*, 332 F.R.D. at 528 (denying the plaintiff's attempt to join a defendant in her official capacity where the defendant left office prior to the proposed joinder); Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office *while the action is pending*. The officer's successor is automatically substituted as a party." (emphasis added)).

Here, Plaintiff filed suit on October 19, 2023 [Doc. 1], and as Defendants concede, Sheriff Gardner was suspended from office on March 12, 2025 [Doc. 79-1 at 1 n.1].  Thus, under Rule 25(d), Sheriff Gardner's successor would automatically be substituted as a party after Gardner's departure.  The Court need not address this substitution, as Plaintiff's remaining official-capacity claims against the Sheriff fail on the merits.

permanent light duty position is . . . not a reasonable accommodation, because it would . . . shift[] all or most of [the disabled employee's] duties to other officers."); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) ("[T]he ADA does not require an employer to reallocate essential job functions or assign an employee permanent light duty." (internal quotation marks omitted)).  Moreover, temporary light-duty work is premised on the expectation that the disabled employee will return to full-duty work.  *See Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1013 (4th Cir. 2020) ("With no tangible signs of improvement, [the employer] could not have been expected to extend such a dramatic reduction in its work requirement [*i.e.*, light duty] indefinitely.").  Plaintiff remains unable to perform the full-duty responsibilities of a sheriff's deputy.  [Doc. 79-3 at 23–24 (113:19–114:18).]  As such, he does not constitute a "qualified individual" under the ADA.[7]

Further, Plaintiff's contentions regarding two of the individual Defendants' pending criminal indictments, an allegedly forged "First Report of Injury" document, discrepancies as to Plaintiff's last day worked, Plaintiff's retention of his departmental weapon after his medical separation, and Defendants' overall bad faith [*see* Doc. 99 at 3–4] find no support in the record and fail to present *material* issues of fact.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."

---

[7] Contrary to Plaintiff's argument [*see* Doc. 99 at 5], medical records restricting Plaintiff to light-duty work do not require the Sheriff's Office to grant Plaintiff a permanent light-duty position.  Put another way, a medical professional's characterization of a disabled employee's abilities does not dictate whether or not an accommodation is reasonable. Plaintiff improperly conflates these separate issues.

(emphasis added)).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Here, Defendants' allegedly fraudulent acts—even if supported by record evidence—would not sway the disposition of the case in Plaintiff's favor.  *See Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994) (noting that a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" (internal quotation marks omitted)); [Doc. 97 at 4 n.2, 7 n.4, 9 n.5].[8]

Finally, Plaintiff claims that his deposition was taken when he was under the influence of medication.[9]  [Doc. 99 at 5.]  The Court overrules this objection, as Plaintiff points to no evidence showing that he was incompetent to testify.  Further, the Court has already construed all facts—including Plaintiff's deposition testimony—in the light most favorable to Plaintiff. *See White v. City of Birmingham,* 96 F. Supp. 3d 1260, 1270 (N.D. Ala. 2015) ("[W]hether [the plaintiff] was medicated does not render her incompetent. [The plaintiff] argues she was under the influence of pain medication when [an investigator] interviewed her . . . and some medical records indicate that [she was

---

[8] Plaintiff briefly references the crime-fraud exception to the attorney-client privilege.  [*See* Doc. 99 at 4, 10–11.]  However, discovery in this matter is closed [*see* Doc. 61 (setting a discovery deadline of March 31, 2025)], and Plaintiff failed to raise the issue in a timely motion to compel.  [*See generally* Docs. 63; 65; 68.]

[9] At the same time, Plaintiff appears to argue that his deposition testimony should "count[] as 'competent evidence' to defeat a motion for summary judgment" where his testimony supports his own arguments.  [Doc. 99 at 8; *see also id.* at 2 (noting "Plaintiff has provided specific names" of comparator employees), 7 (claiming that "the plaintiff can point to any evidence – like [his] own deposition – that shows a genuine dispute of fact").]  The Court cannot simultaneously credit *and* discredit Plaintiff's deposition testimony.  In any case, Plaintiff's testimony regarding the two Caucasian employees, as previously stated, does not satisfy Rule 56's requirements.

prescribed] medication [prior to the interview]. Rather than exclusion, however, the court finds that [the plaintiff's] statement is better addressed by taking every reasonable inference from her statement in [the plaintiffs'] favor for purposes of summary judgment.").

## CONCLUSION

Based upon the foregoing, the Court accepts the Report and Recommendation of the Magistrate Judge as modified. Accordingly, Defendants' motion for summary judgment [Doc. 79] is GRANTED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

March 13, 2026
Florence, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.